T.C. Summary Opinion 2007-50

UNITED STATES TAX COURT

FRED A. WINDOVER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11591-05S.                 Filed March 28, 2007.

<u>Fred A. Windover</u>, pro se.

<u>Michael R. Fiore</u>, for respondent.

CARLUZZO, <u>Special Trial Judge</u>:  This section 6330(d)[1]

case was heard pursuant to the provisions of section 7463.

Pursuant to section 7463(b), the decision to be entered is not

_____

[1]  Unless otherwise indicated, section references are to the
Internal Revenue Code of 1986, as amended, in effect for the
relevant period.

reviewable by any other court, and the opinion shall not be treated as a precedent for any other case.

In a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, dated May 23, 2005, respondent determined to proceed with the collection by levy of petitioner's 1999 Federal income tax liability.

The issues for decision are:  (1) Whether the amount of petitioner's outstanding 1999 Federal income tax liability that respondent is attempting to collect by levy is overstated because the proceeds of a check, dishonored when first presented but paid upon second presentment, were misapplied by respondent to years other than 1999; if so (2) whether respondent's failure to take the misapplication into account in the determination to proceed with collection by levy of petitioner's 1999 Federal income tax liability is an abuse of discretion; and (3) whether petitioner is liable for the additions to tax included in petitioner's 1999 Federal income tax liability.

## Background

Some of the facts have been stipulated and are so found.  At all times relevant, petitioner, who is an attorney, was married. He resided in Worcester, Massachusetts, at the time the petition was filed.

From time to time, it appears that petitioner and his spouse filed untimely joint Federal income tax returns,[2] which is what occurred for 1998 and 1999. Petitioner's 1998 return was received by respondent on May 29, 2003, and "processed" on June 30, 2003. Included in the envelope in which that return was mailed was an $11,074 check, dated May 2003, payable to respondent and drawn on one of petitioner's checking accounts (the 1998 check). The amount of the 1998 check represented the amount of tax to be paid with petitioner's 1998 return; interest, penalties, or additions to tax were not included in the amount. The 1998 check was dishonored for insufficient funds the first time it was presented, but it was paid on June 6, 2003, when presented for the second time. Although the 1998 check was at first dishonored, the payment was credited as of the date received against petitioner's 1998 liability. As of June 2003, after being given credit for the 1998 check, petitioner's outstanding 1998 liability, consisting of interest and additions to tax, approximated $10,000.

---

[2] For convenience, Federal income tax returns for years relevant here will be identified as petitioner's returns, regardless of whether a joint return was filed for that year. Similarly, relevant Federal income tax liabilities will be referred to as petitioner's liabilities even though the liability for a particular year might be joint and several with petitioner's spouse.

On June 2, 2003, petitioner's 1999 joint return was received by respondent and "processed" on July 14, 2003.  Included in the envelope in which that return was mailed was a $13,178 check (the 1999 check), dated May 27, 2003, payable to respondent, and drawn on the same checking account as the 1998 check.  The 1999 check was also dishonored for insufficient funds the first time it was presented for payment on June 5, 2003, but was paid upon subsequent presentment on June 10, 2003.[3]  As with the 1998 check, the amount of the 1999 check represented the amount of tax to be paid with petitioner's 1999 return; interest, penalties, or additions to tax were not included in the amount.  Petitioner's Social Security number is notated on the 1999 check, but nothing of the face of the 1999 check directs or suggests to what year it should be applied.

As it turned out, upon payment after being dishonored, the proceeds of the 1999 check were not entirely applied to petitioner's 1999 outstanding tax liability.  Instead the payment was split between petitioner's then outstanding income tax liabilities for 1998, 1999, and 2002, in the amounts of $10,441.17 (the approximate amount of petitioner's remaining 1998 liability after the payment made by the 1998 check was taken into

---

[3] Upon being notified by his bank that each check was dishonored for insufficient funds, petitioner transferred funds between bank accounts and contacted respondent to request that each check be presented for a second time.

account), $1,689.81, and $1,047.02, respectively.  Although the 1999 check was not paid until June 10, 2003, credits for the applications to 1998, 1999, and 2002 were given as of June 2, 2003, the date respondent received the 1999 check.

Needless to say, because the majority of the proceeds of the 1999 check were applied to his 1998 tax liability, petitioner's 1999 liability went largely unpaid.  On or about January 12, 2004, petitioner was notified by respondent that his then 1999 income tax liability, including interest and additions to tax, totaled $17,504.  Up until that time, petitioner considered his 1999 liability to have been paid by the 1999 check.  In response to his inquiry regarding his 1999 liability, petitioner was advised in respondent's letter dated March 15, 2004, as to how the proceeds of the 1999 check were applied.

Following receipt of respondent's explanation, in a letter dated April 9, 2004, petitioner requested that respondent abate, fully or partially, "penalties"[4] to tax applicable for 1998, 1999, and 2002 because he "paid the full amount of all taxes owed and interest due for those years before making this request."  In that letter petitioner also referenced, without providing any detail, "significant personal financial problems".  By letter

_____

[4] Various references to "penalties" that occur in various places in the record actually are to additions to tax under sec. 6651(a)(1) and (2).  References in this opinion to "additions to tax" relate to one, or the other, or both additions, as appropriate.

dated June 2, 2004, respondent notified petitioner that he had received petitioner's abatement request and requested further information, regarding petitioner's personal and financial difficulties. Petitioner did not respond to respondent's letter or submit any additional information.

By letter dated June 26, 2004, respondent notified petitioner of his intent to levy with respect to petitioner's then outstanding 1999 tax liability. That letter also advised petitioner of his right to request an administrative hearing with regard to respondent's proposed levy. According to the letter, petitioner's outstanding 1999 tax liability, including interest and additions to tax, totaled $18,097.61. Petitioner, on July 20, 2004, made a timely request for an administrative hearing. See sec. 6330(a) and (b).

Before an administrative hearing was conducted (or even scheduled), respondent caused a Notice of Federal Tax Lien (NFTL) to be filed on August 12, 2004, and duly notified petitioner of the event by certified mail on August 19, 2004. Like the proposed levy, the NFTL related to petitioner's then outstanding 1999 tax liability. In response to respondent's August 19, 2004, letter notifying him about the NFTL, petitioner timely requested an administrative hearing. See id.

Ultimately, through correspondence over several months and a telephone conference on or about April 6, 2005, petitioner's administrative hearing was conducted.  In essence, petitioner's positions at the administrative hearing can be summarized as follows:  (1) The NFTL for 1999 should not have been filed until an administrative hearing was conducted with respect to respondent's notice of intent to levy; (2) the proceeds of the 1999 check were misapplied to liabilities for years other than 1999;[5] and (3) petitioner's request for abatement of additions to tax was not properly considered.

In response to petitioner's second point, respondent explained his actions by pointing out to petitioner that the 1999 check was not designated to be applied to any particular year. In response to this explanation, in correspondence that predated the telephone conference, petitioner noted, "in fact * * * [the 1999 check] was sent with my 1999 return and was for the exact amount shown as due on that return.  I believe almost anyone would consider a check sent with a particular year (1999) in the

---

[5] Petitioner also submitted an offer-in-compromise (doubt as to liability) during the administrative hearing as an alternative to the proposed collection devices.  The offer was rejected.  Several times during petitioner's presentation at trial he expressly stated that he does not rely upon the denial as a ground in support of his position that respondent's determination to proceed with collection of his 1999 tax liability is an abuse of discretion.

exact amount shown as due on that return, as a clear designation as a payment for 1999".

None of petitioner's positions persuaded respondent to forgo collection of petitioner's 1999 tax liability. As noted above, in a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, dated May 23, 2005, respondent determined to proceed with the collection by levy of petitioner's 1999 Federal income tax liability.[6]

## Discussion

The parties are not at odds regarding the technical provisions of sections 6320 and 6330. Furthermore, petitioner does not claim that respondent failed to satisfy any of the mechanical or procedural obligations contemplated by those statutes. Consequently, we see little point in a detailed discussion regarding those requirements. Instead, we turn our attention immediately to petitioner's complaints and begin with his position regarding the timing of the filing of the NFTL.

According to petitioner, the NFTL should not have been filed while his request for an administrative hearing with respect to

---

[6] Respondent's correspondence to petitioner during administrative consideration references both the notice of intent to levy and the NFTL. Proceeding with one administrative hearing in response to both collection devices is certainly contemplated under the statutory scheme. See sec. 6320(b)(4). Nevertheless, for reasons not explained, the notice of determination upon which this case is based references only respondent's intention to levy.

respondent's proposed levy was pending. Other than noting his general objection to the situation, petitioner provides no basis for his complaint. His position suggests that the NFTL is not valid, but given the focus of the above-referenced notice of determination, the validity of the NFTL as a collection device is not before us. Even if it were, it is obvious that simultaneously proceeding with both collection devices invalidates neither. The timing of the filing of the NFTL is consistent with the provisions of section 6320 as well as section 6321,[7] and does not violate any of the provisions of section 6330.[8] To the extent that petitioner, if only by implication, suggests the contrary, the fact that the NFTL was filed when it was filed provides no basis for finding that respondent's determination to proceed with collection by levy of petitioner's 1999 tax liability is an abuse of discretion.

---

[7] Sec. 6321 provides: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

[8] Upon a timely request for an administrative hearing in response to a notice of intent to levy, only the levy actions that are the subject of the requested hearing are suspended. See also sec. 301.6330-1(g)(2), Q&A-G3, Proced. & Admin. Regs., which provides that respondent may file notices of Federal tax lien for tax periods and taxes, whether or not covered by a previously issued notice of intent to levy for the same periods and taxes.

Next, we consider petitioner's claim that respondent misapplied the proceeds of the 1999 check to years other than 1999. According to petitioner, had the proceeds of the 1999 check been properly applied to his 1999 liability, he would owe less than respondent is attempting to collect. All things considered, we cannot help but note that, had the proceeds of the 1999 check been applied entirely to his 1999 tax liability, petitioner's 1998 tax liability would now closely approximate the amount that respondent claims he now owes for 1999.[9] Petitioner, who is a practicing attorney, refused to acknowledge this point during trial.

Nevertheless, ignoring the practical infirmities of petitioner's position, we address, on a technical basis, respondent's decision to apply the proceeds of the 1999 check to years other than 1999.

As noted in correspondence with petitioner, respondent justifies the manner in which the proceeds of the 1999 check were applied upon the ground that petitioner did not, in writing, designate the year(s) to which the proceeds of the 1999 check should be applied. We have examined the 1999 check and, consistent with respondent's position, nothing on the face of the

---

[9] By June 2, 2003, the date the 1999 check was received, petitioner's 1998 liability for the sec. 6651(a)(2) addition to tax had reached the maximum amount allowable under the statute, but that addition to tax for 1999 would continue to accrue at the rate of .5 percent per month for 9 more months.

check directs to what year the payment should be applied.[10]  On the other hand, as noted in his letter to respondent, petitioner "believe[s] almost anyone would consider a check sent with a [return for a] particular year * * * in the exact amount shown as due on that return, as a clear designation as a payment for * * * [that year]".  The common sense attractiveness of petitioner's observation obscures, to some extent, the reality that respondent is most certainly not "almost anyone".

Furthermore, respondent's application of the proceeds of the 1999 check, if not entirely consistent with common sense, complied completely with the procedures contemplated in Rev. Proc. 2002-26, 2002-1 C.B. 746.  Rev. Proc. 2002-26, sec. 3.02, provides that if the taxpayer does not include specific written instructions with a voluntarily submitted payment of tax, then "the Service will apply the payment to periods in the order of priority that the Service determines will serve its best interest.  The payment will be applied to satisfy the liability for successive periods in descending order of priority until the payment is absorbed."  Because petitioner did not, in writing, specifically instruct respondent as to how he intended the proceeds of the 1999 check to be applied, respondent was entitled

---

[10]  It is unknown whether a Form 1040-V, Payment Voucher, is included with petitioner's 1999 return because, although it would seem to be a good idea to have placed a copy of that return in the record, neither party did so.  Then again, the procedural history of this case is filled with the absence of good ideas.

to apply those proceeds in a manner consistent with the provisions of the above-referenced revenue procedure, which is precisely what occurred in this case.

That being so, petitioner's claim that the proceeds of the 1999 were misapplied by respondent must be rejected, which in turn requires the rejection of his claim regarding the consequences of the alleged misapplication.

Lastly, we turn to petitioner's claim that respondent improperly refused to grant his request for abatement of the additions to tax. We construe petitioner's position in this regard to be that he should not be held liable for the additions to tax. We have the jurisdiction in this case to determine, on the basis of a de novo review, his liability for those additions to tax for 1999. Downing v. Commissioner, 118 T.C. 22 (2002).

As relevant here, in general, section 6651(a)(1) provides for an addition to tax (commonly referred to as the late filing penalty) that can amount to 25 percent of the tax (net amount), required to be shown on the return if the return is filed more than 4 months after the due date of the return. See sec. 6651(b).

Section 6651(a)(2), in general, provides for an addition to tax (commonly referred to as the late payment penalty) that can amount to 25 percent of the unpaid portion of the tax shown on a return if the unpaid portion remains unpaid for more than 49

months after the tax is due to be paid.[11]  A taxpayer can be absolved of liability from either addition to tax if the taxpayer demonstrates that the failure to file, or the failure to pay, as appropriate, is due to reasonable cause and not due to willful neglect.  Sec. 6651(a); Higbee v. Commissioner, 116 T.C. 438 (2001).

Petitioner's 1999 return was filed more than 4 months late.  Petitioner has offered no reason why that return was filed when it was.  Consequently, he is liable for the section 6651(a)(1) addition to tax for his failure to file a timely 1999 Federal income tax return.

As of June 2, 2003, the date that respondent received petitioner's 1999 return and 1999 check, the section 6651(a)(2) addition to tax had just about reached its maximum amount.  Had respondent applied the 1999 check to the liability shown on petitioner's 1999 return, further accrual of the addition to tax would have been prevented, but the portion of the section 6651(a)(2) addition to tax that had accrued up until that date would be applicable because petitioner had not shown (and has not

_____

[11]  The sec. 6651(a)(1) addition to tax accrues at the rate of 5 percent per month for as long as the failure to file continues until the maximum 25 percent is reached; the sec. 6651(a)(2) addition to tax accrues more slowly at the rate of .5 percent per month until the maximum 25 percent is reached. For those months that both additions to tax apply, the amount of the sec. 6651(a)(2) addition to tax offsets the amount of the sec. 6651(a)(1) addition to tax.

shown here) reasonable cause for his failure timely to pay the tax shown on that return.

If petitioner had paid his 1999 liability upon being notified in March 2005 as to how the proceeds of the 1999 check had been applied, then we might be receptive to an argument that the amount of the section 6651(a)(2) addition to tax should not exceed the amount that accrued up until the date the 1999 check was received. But he did not pay that tax when so notified, and as best can be determined from the record, as of the date of trial in this case, the tax shown on petitioner's 1999 return remained largely, if not entirely, unpaid. Consequently, more than enough time has elapsed to allow for the imposition of the maximum amount of penalty, as petitioner has not shown reasonable cause for his continued failure to pay after March 2005. Consequently, petitioner is liable for the entire amount of the section 6651(a)(2) addition to tax for 1999.

In all other respects, we are satisfied that respondent has complied with the provisions of section 6330 and petitioner does not suggest otherwise. It follows that respondent's determination to proceed with collection of petitioner's 1999 tax liability in accordance with the Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330, dated May 23, 2005, is sustained.

To reflect the foregoing,

Decision will be

entered for respondent.
